UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOLLY ARPINO,<br>    *Plaintiff*,<br>v.<br><br>KAREN BRESCIANO, et. al.,<br>    *Defendants*. | No. 3:18-cv-00183 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Holly Arpino ("Ms. Arpino") proceeding *pro se* has sued Karen Bresciano, Peggy Sellech, and the University of Connecticut (collectively "Defendants") under 42 U.S.C. §§ 1983, 1983ed, and 2000d. Ms. Arpino alleges that the Defendants violated her civil rights by delaying her fall 2015 enrollment at the University of Connecticut and emergency loan disbursement until after she was temporarily disabled from an injury.

Defendants have filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim on which relief can be granted.

For the following reasons, the Motion to Dismiss is **GRANTED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

Ms. Arpino allegedly enrolled at the University of Connecticut in the summer of 2015. ECF No. 1. On July 24, 2015, she allegedly sustained an injury. *Id.* at 3. Ms. Arpino alleges that she was denied enrollment for the fall semester because she owed the University of Connecticut approximately $1,200. *Id.*

Ms. Arpino claims allegedly flow from two issues: her inability to register for fall 2015 classes and the unavailability of emergency student loans to assist her in registering. First, a

1

temporary disability, for more than thirty days during the summer of 2015 session, allegedly caused her to owe $1,200 to the University of Connecticut. ECF No. 1. This debt allegedly caused a three-week delay in her fall enrollment—but only after Ms. Arpino filed an administrative complaint with the university. *Id.* at 3. Ms. Arpino further contends that Ms. Sellech, University of Connecticut's Bursar, did not allow her to register, even though she allegedly permitted other students to register while stilled owing the University of Connecticut money. *Id.*

Second, Ms. Arpino alleges that Ms. Bresciano, then acting as the Dean of Students, purposefully and willfully misled Ms. Arpino regarding emergency financial aid. ECF No. 1. Ms. Arpino contends that Ms. Bresciano knew of her injury and falsely told her that there were no emergency student loans for the summer session. *Id.* at 4. Ms. Arpino, however, claims that Ms. Bresciano neglected to mention that the University of Connecticut recently started a new grant program to address this type of situation. *Id.* Finally, Ms. Arpino asserts that Ms. Bresciano purposely created delays and arbitrary limitations on emergency student loans, which led to catastrophic financial problems for Ms. Arpino. *Id.*

### B. Procedural History

On January 31, 2018, Ms. Arpino filed this Complaint against Ms. Bresciano, Ms. Sellech, and the University of Connecticut. ECF No. 1. On the same day, Mr. Arpino moved for leave to go ahead *in forma pauperis*, and the Court issued a standing protective order. ECF Nos. 2, 5. On February 12, 2018, the Court referred to Magistrate Judge William Garfinkel Ms. Arpino's motion for leave to proceed *in forma pauperis*, which the Court denied without prejudice on February 26, 2018. ECF Nos. 7, 10.

On March 6, 2018, Ms. Arpino moved again for leave to proceed *in forma pauperis*. ECF No. 11. Two days later, the Court again referred the motion to Magistrate Judge Garfinkel, which was then granted on March 16, 2018. ECF Nos. 12, 13.

On May 23, 2018, the Court issued a scheduling order regarding the Answer deadline for defendants. ECF No. 26.

On June 1, 2018, Ms. Bresciano, Ms. Sellech, and the University of Connecticut moved to stay the Rule 26(f) requirements, which the Court denied without prejudice. ECF no. 27, 28. On June 20, 2018, the parties filed a report of the 26(f) planning meeting. ECF No. 30. The next day, the Court issued an order requiring the parties to file an amended Rule 26(f) report, thirty days after the Court rules on Defendants' motion to dismiss. ECF No. 31.

On July 23, 2018, Ms. Bresciano, Ms. Sellech, and the University of Connecticut moved to dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. ECF No. 32. Defendants also noticed Ms. Arpino concerning the motion to dismiss. ECF No. 33. Ms. Arpino has not yet responded.

## II.  STANDARD OF REVIEW

### A.  Subject Matter Jurisdiction

 "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); FED. R. CIV. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction over the claims. *Id.*

If a federal court lacks subject-matter jurisdiction under Rule 12(b)(1), the lawsuit must be dismissed. *See* FED. R. CIV. P. 12(h)(3); FED. R. CIV. P. 12(b)(1). "Federal courts are courts of

limited jurisdiction[.]" *Gunn v. Minton*, 568 U.S. 251, 256 (2013); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (explaining that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies"). In deciding whether a case or controversy exists, the district court views all uncontroverted facts as true and "draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Where jurisdictional facts are in dispute, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### B. Failure to State a Claim

A complaint must also contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). A court will dismiss any claim that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), the court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted)). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a

4

cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Id.* Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At this stage, all factual allegations in the complaint are taken as true. *Iqbal*, 556 U.S. at 678. A court also will view the factual allegations in the light most favorable to the plaintiff, and all inferences will be drawn in favor of the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

Courts considering motions to dismiss under Rule 12(b)(6) generally limit its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In reviewing a *pro se* complaint, a court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### III. DISCUSSION

#### A. Rule 12(b)(1) Motion for Lack of Subject-Matter Jurisdiction

Defendants argue that, without a waiver by the State, or Congressional override, the Eleventh Amendment bars a damages action in federal court against the University of

Connecticut as an arm of the state, or Ms. Sellech and Ms. Bresciano acting in their official capacities. The Court agrees.

"[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III." *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). The Supreme Court has made clear that "federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). Only by requiring a "clear declaration" by the State can a federal court be "certain that the State in fact consents to suit." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S., 666, 680 (1999). And waiver may not be implied. *Id.* at 682

Here, there is no sign that Connecticut waived Eleventh Amendment immunity. Under Connecticut law, no "state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment" and any "complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." C.G.S. § 4-165. As a state entity under Connecticut law, *see* C.G.S. § 10a-102, the University of Connecticut "enjoys the same Eleventh Amendment immunity from suit in federal court as the state itself." *See Posr. v. Ct. Off. Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). "This bar remains in effect when State officials are sued for damages in their official capacity" because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted). The Eleventh Amendment therefore bars any claims against the University of Connecticut, Ms. Bresciano, or Ms. Sellech in their official capacities.

Accordingly, the Court dismisses the claims brought against the University of Connecticut and Ms. Sellech and Ms. Bresciano acting in their official capacities under Section 1983.[1]

### B.  Rule 12(b)(6) Motion for Failure to State a Claim

While the claim against the University of Connecticut claims brought against individual defendants in their official capacities must be dismissed, the Court still must review whether there are any viable claims against the two individual defendants in their individual capacities under Section 1983 or the American with Disabilities Act ("ADA"). As for Section 1983 and the ADA, the answer is no.

### 1. The Remaining Section 1983 Claims

Section 1983 does create a private right of action against "persons" who, acting "under color of [law]," violate a plaintiff's constitutional rights—regardless of whether that person was acting pursuant to an unconstitutional state law, regulation, or policy. 42 U.S.C. § 1983. Because Section 1983 does not create a separate cause of action but only serves as a procedural vehicle for the adjudication of violations of constitutional rights, Ms. Arpino only has a viable Section 1983 claim if she is alleging a violation of a constitutional right. *See Whitnum v. Emons*, No. 3:15-cv-959 (SRU), 2016 WL 2644886, at *2 (D. Conn. May 9, 2016) ("Section 1983 is the mechanism that a plaintiff may use to bring a cause of action in federal court based on a perceived violation of the U.S. Constitution . . . Unless a plaintiff can point to another statutory provision or judicial doctrine that permits individuals to bring an action to enforce a

---

[1] "[W]hen a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.'" *Katz v. Donna Karan Co. L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (citing *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it'") (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

constitutional right, a plaintiff who fails to meet the elements of Section 1983 may not bring a constitutional claim in federal court").

Ms. Arpino, however, is not alleging a violation of a constitutional right, at least not a viable one. *See Bd. of Curators of the Univ. of Miss. v. Horowitz*, 435 U.S. 78, 82 (1978) ("To be entitled to the procedural protections of the Fourteenth Amendment, respondent must . . . demonstrate that her dismissal from the school deprived her of either a 'liberty' or a 'property' interest"). Instead, her Section 1983 action is predicated on the violation of alleged ADA statutory rights. Compl., at 3–4. To the extent that her claims flows alleged violations of the ADA, however, Ms. Arpino does not have a viable Section 1983 claim. *See Garcia v. S.U.N.Y Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as [Plaintiff] is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials"); *Lewis v. Dep't of Corr.*, No. 3:16-cv-1586 (VAB), 2017 WL 487016, at *6 (D. Conn. Feb. 6, 2017) (same).

As a result, Ms. Arpino's Section 1983 action brought against Ms. Bresciano and Ms. Sellech in their individual capacities therefore is dismissed.

### 2. ADA and Rehabilitation Act Claims

Ms. Arpino's remaining claims are under Title II of the ADA. *City and County of San Francisco, California v. Sheehan*, 135 S.Ct. 1765, 1773–74 (2015) (find that "[o]nly public entities are subject to Title II" of the ADA and "an entity can be held vicariously liable for money damages for the purposeful or deliberately indifferent conduct of its employees"). "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *United*

*States v. Georgia*, 546 U.S. 151, 153 (2006) (citing 42 U.S.C. § 12132). This statutory provision "authorizes suits by private citizens for money damages against public entities that violate § 12132." *Id.* at 154. Public entities include "state and local governments, their instrumentalities, and commuter authorities." *Pierce v. Fordham Univ., Inc.*, 692 Fed. App'x. 644, 646 (2d Cir. 2017). The University of Connecticut is a state entity. *See* C.G.S. § 10a-102; *see also Powell v. Nat'l Bd. of Med. Examr's*, 364 F.3d 79, (2d Cir. 2004) ("UConn concedes it is an instrumentality of the state of Connecticut").

The Supreme Court proposed a three-part test for determining whether an ADA claim abrogated the Eleventh Amendment: "lower courts will be best situated to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such conduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity in such contexts is nevertheless valid." *Georgia*, 151 U.S. at 159; *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013).

Under Title II, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013) (citing 28 C.F.R. § 35.130(b)(7)). To prove a violation of Title II of the ADA or the Rehabilitation Act, a plaintiff must establish that: "(1) that [they are] a "qualified individual" with a disability; (2) that [they were] excluded from participation in a public entity's services, programs or activities or was otherwise discriminated

against by a public entity; and (3) that such exclusion or discrimination was due to [their] disability." *Id.*; *see also Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir.1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem").

Here, Ms. Arpino has articulated that her indebtedness to the University of Connecticut and later injury from delayed enrollment started with a disabling injury, which allows the Court to consider whether the state action was due to unlawful ADA discrimination. 42 U.S.C. § 12131 (defining "qualified individuals with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity").

Ms. Arpino alleges a temporary disability during the summer 2015 session resulted the University not allowing her to resister for the fall 2015 term. ECF No. 1, at 3. She further alleges that Ms. Sellech previously made exceptions for other students that owed the university payments, which allowed them to register. *Id.* Only after more than three weeks of delay was Ms. Arpino allowed to register for the fall semester. *Id.* Ms. Arpino also alleges that Ms. Bresciano willfully misled and lied to her about emergency financial aid. ECF No. 1, at 4. Ms. Arpino claims that Ms. Bresciano knew of her injuries and rebuffed her attempts for emergency student loans. *Id.* Ms. Arpino asserts that she received her emergency student loan during the third or fourth week. *Id.*

Significantly, while Ms. Arpino refers to a temporary disability, she does not claim that, the basis for the alleged differential treatment between other students who allegedly could

register and herself is her disability. Indeed, the Complaint is silent as to whether these other students who allegedly could register, even though they owed money to the University of Connecticut, had a disability or not.

As a result, Ms. Arpino has failed to allege the facts sufficient to draw an inference that any alleged exclusion was based on a disability. *See Natarelli v. VESID Office*, 420 Fed. App'x. 53, 55 (2d Cir. 2011) ("the district court correctly determined at the first step of *Georgia* analysis that the state conduct at issue did not violate Title II because Natarelli failed to allege facts sufficient to support an inference that his claimed exclusion from VESID's services was based on disabilities. Because this finding alone required dismissal of Natarelli's Title II claim, the district court need not have proceeded to the subsequent steps of *Georgia* analysis . . .").[2]

As a result, the Court dismisses Ms. Arpino's ADA claims against the University of Connecticut, Ms. Bresciano, and Ms. Sellech.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**.[3]

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of November 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[2] Ms. Arpino also alleges that her disability was a "temporary" one, which raises a question, although not one necessary to resolve now, as to whether there is a "disability" within the meaning of the ADA. *See Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 646 (2d Cir. 1995) (affirming a jury verdict for defendant police officers because, while a jury could find that he was impaired from working for seven months, the "unspecific residual limitations" described were "of too short a duration and too vague an extent to be 'substantially limiting,'" which is required for a disability determination"); *see also Horwitz v. L. & J.G. Stickley, Inc.*, 20 Fed. App'x. 75, 81 (2d Cir. 2001) ("Based on the totality of the evidence cited by Horwitz-including her hospitalizations, treatment and SSDI benefits-she has not presented a prima facie case that she is covered by the ADA. Although Horwitz was limited in her ability to work during her periods of hospitalization, those incidents were brief and she has suffered no residual limitations substantially curtailing her ability to be employed or engage in other life activities").

[3] As a preliminary matter, we again "note that where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016).